## MATTER OF COLLEY, et al.

### In Visa Petition Proceedings

### PHI-N-8302-8305

*Decided by Commissioner June 19, 1981*

(1) Beneficiaries, employed as aerial survey pilot, survey pilot/ navigator, aerial photographer, and aerial camera operator, possessed the requisite "specialized knowledge" within the meaning of section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L), to be classified as intracompany transferees because their skills were necessary to operate the unique and unusually sophisticated aerial photography and computerized navigational system developed by the Canadian parent company. The petitioner has also demonstrated that all four beneficiaries have been employed by the parent company in excess of one year and that their services are essential for the successful operation of this particular equipment.

(2) In *Matter of Raulin*, 13 I&N Dec. 618, and *Matter of LeBlanc*, 13 I&N Dec. 816, the occupations did not inherently qualify the beneficiaries and the Service looked for elements beyond general job tasks and duties for the specialized knowledge related to the proprietary interests of the business, its management, and concerned skills or knowledge related to the proprietary interests of the business, its management, and concerned skills or knowledge not readily available in the job market.

(3) Specialized knowledge must be relevant to the business itself and directly concerned with the expansion of commerce or it must allow a business to become competitive in overseas markets. *Matter of Michelin Tire Corporation*, 17 I&N Dec. 248 (R.C. 1978).

(4) Most employees today are specialists and have been trained and given specialized knowledge; however, it can not be concluded that all employees with specialized knowledge or performing highly technical duties are eligible for classification as intracompany transferees.

ON BEHALF OF PETITIONER: Howard R. Scherer
Montgomery, McCracken,
Walker, and Rhoads
Three Parkway
Philadelphia 19105

This matter is before me on certification from the Regional Commissioner in accordance with 8 CFR 103.4.

The District Director found the beneficiaries eligible as intracompany transferees under section 101(a)(15)(L) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(15)(L), on October 21, 1980. The District Director reopened that decision based upon his motion, approved the visa petitions and certified the proceeding to the Regional Commissioner.

The Regional Commissioner affirmed the District Director's decision approving the visa petitions.

The petitioner seeks to classify the beneficiaries as intracompany transferees based upon the claim that they possess specialized knowledge and that they have been employed by the Canadian parent firm for at least 1 year. The petitioner seeks to employ the beneficiaries in the following occupations: aerial survey pilot, survey pilot/navigator, aerial photographer, and aerial camera operator. The District Director approved the petitions based upon a broad interpretation of the term "specialized knowledge" and the fact that the beneficiaries possessed highly technical skills acquired and practiced over a period of years. The District Director also relied upon the *Dictionary of Occupational Titles* (U.S. Department of Labor, Employment and Training Administration, Fourth Edition, 1970) which classified the identified occupations as "Professional, Technical and Managerial." The District Director concluded "[t]he Service does not enhance it's responsibilities by attempting to narrowly draw terms left undefined, persumable [sic] on purpose, by the Congress."

Section 101(a)(15)(L) of the Act, 8 U.S.C. 1101(A)(15)(L), reads as follows:

> (L) an alien who, immediately preceding the time of his admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, . . .

The petitioner, Capital Air Surveys, Inc., was incorporated in the state of Delaware on February 22, 1980. It has obtained a Certificate of Authority from the Commonwealth of Pennsylvania authorizing the transaction of the business of conducting aerial land surveys. The petitioner is a wholly-owned subsidiary of Capital Air Surveys Limited, Pembroke, Ontario, Canada which was incorporated in that country in 1957. The United States subsidiary specifically seeks aerial photography and survey work in this country thus expanding its business operation into the United States. The petitioner has one aircraft registered in the United States and has established a business office at 6241 Saltsburg Road, Pittsburgh, Pennsylvania. The value of the aircraft and the specialized aerial survey equipment is estimated to be $1,750,000 and $360,000, respectively. The petitioner's counsel states that the company has previously submitted bids for performance of aerial survey contracts in the United States and while these bids were not successful, it is the company's intention to establish an ongoing business in the United States.

The evidence and information furnished clearly establishes that the

petitioner is a bona fide business entity incorporated under laws of Delaware. The fact that the petitioner to date has not performed any actual business or work is not material. In *Matter of LeBlanc*, 13 I&N Dec. 816 (R.C. 1971), the Service determined that an alien beneficiary may be coming to the United States to establish an affiliate or subsidiary office and the affiliate or subsidiary need not be in existence or be operational at the time of admission. Furthermore, H.R. Rep. No. 91-851 in section 1(b) specifically states that the provision was enacted to address the absence of statutory provision for "international executives to be admitted for temporary assignments with parent companies, branches or affiliates . . ." The Report also refers to intracompany transfers for companies with "branches both in Canada and the United States" and freely uses the term international corporations throughout. There is no wording either in the Act or legislative history to indicate the L nonimmigrant visa category was to be limited to American parent corporations thus restricting the movement of foreign corporations and their investments into the United States. As a wholly owned subsidiary of a Canadian Company, I find that the petitioner may employ qualified employees under section 101(a)(15)(L), 8 U.S.C. 1101(a)(15)(L).

The remaining issues are to determine whether or not the beneficiaries will be employed by the petitioner in an executive or managerial occupation or in a capacity involving specialized knowledge and that the beneficiaries have been employed by the same employer or affiliate or subsidiary thereof for one year prior to their admission. The record of proceedings establishes that the petitioner has contracted to perform high altitude jet photography for Teledyne Geotronics of Long Beach, California. The altitude will range from 42,000 to 48,000 feet. The petitioner claims that the use of its equipment and process requires specialized knowledge well outside the parameters of a traditional survey pilot, navigator, or camera operator and that the terms of contract require the use of highly complex equipment.

The term specialized knowledge is not defined by statute. H.R. Rep. No. 91-851 also fails to provide a precise definition of the term but the Report does state that the purpose of the L provision is to facilitate the admission of "key personnel" and "managerial personnel." The Report furthermore states: "The class of persons eligible for such nonimmigrant visas is narrowly drawn and will be carefully regulated and monitored by the Immigration and Naturalization Service." Thus, the intent of Congress was not to authorize the admission of all employees.

The modern workplace requires a high proportion of technicians and specialists. Most employees today are specialists and have been trained and given specialized knowledge. However, in view of the House Report, it can not be concluded that all employees with specialized knowledge or performing highly technical duties are eligible for classification as intra-

company transferees. The House Report indicates the employee must be a "key" person and associates this employee with "managerial personnel."

In *Matter of Raulin* 13 I&N Dec. 618 (R.C. 1970), an L-1 nonimmigrant visa classifications was accorded to an executive secretary. In *Matter of LeBlanc*, 13 I&N Dec. 816 (R.C. 1971), a sales assistant was determined to be eligible for classification as an intracompany transferee. In both of these decisions, the Service did not find that the occupations inherently qualified the beneficiaries for the classification sought and looked for elements beyond general job tasks and duties. Both decisions rested on a finding that the beneficiaries had essential knowledge of the business's product or service, management operations, decision making process, or similar elements. In other words, the specialized knowledge related to the proprietary interests of the business, its management, and concerned skills or knowledge not readily available in the job market. Similarly, in *Matter of Michelin Tire Corporation* 17 I&N Dec. 248 (R.C. 1978), the Service found that the specialized knowledge must be relevant to the business itself and directly concerned with the expansion of commerce or it must allow a business to become competitive in overseas markets. In that case, the Service denied classification to a highly educated and experienced teacher who was to instruct the children of French employees in order that the students not retrogress in their studies upon their return to the French educational system.

The petitioner in this proceeding has furnished additional evidence and information which demonstrates that it is involved in unusually sophisticated aerial photography and that it uses a computerized navigational and camera operating system known as a dual channel digital control system. The system was developed by the parent company and a patent is being sought. The system is unique to the company although perhaps two other similar systems exist in North America. The Chief, Procurement Section, Contract Management Division of the U.S. Geological Survey has confirmed that the camera operation and navigational systems used in high altitude jet photography are essentially developed "in house" by the companies engaged in such photography and that systems are not commercially available at this time. The petitioner has also demonstrated that all four beneficiaries have been employed by the parent company in excess of 1 year and that their services are essential for the successful operation of this particular equipment.

In view of the foregoing discussion, I find the beneficiaries to be involved in duties which are necessary in order for the company to remain competitive, that those duties related directly to the product or service of the company, and that the beneficiaries have specialized knowledge of the equipment and particular techniques used by the petitioner

and which are within the proprietory knowledge of the petitioner. I, therefore, find the beneficiaries eligible for the classification sought.

ORDER: The petitions are approved.